

## NEW EMPLOYEE AGREEMENT

THIS AGREEMENT is made and entered into this 1st day of May, 2014, by and between TaaSera, Inc., a Delaware corporation ("the Company"), and Joseph M. Stanton ("Employee").

### RECITALS

WHEREAS, the Company's business includes the development and sale of computer and network security technology;

WHEREAS, because such fields are highly competitive in terms of the technology, customers, designs and other matters, as well as in attracting qualified professionals to work therein, the Company has a legitimate interest in lawfully protecting the competitive advantages it has developed at great effort and expense; and

WHEREAS, Employee recognizes that the Company has legitimate need for restricting Employee's activities which would be contrary to the Company's interests.

NOW, THEREFORE, in consideration of the initiation of an employment relationship or the continued employment relationship between the Company and Employee and for other good and valuable consideration, the parties, intending to be legally bound hereby, agree as follows:

1. Employee agrees to perform and carry out diligently, faithfully, loyally and to the best of Employee's ability all duties assigned and instructions given to Employee by authorized personnel of the Company and to comply with the rules, regulations, policies and procedures of the Company. Employee will at all times act and be comported in the best interests of the Company. Employee is an employee "at will". Either Employee or the Company may terminate Employee's employment at any time, with or without cause, for any reason or no reason. Upon such termination, neither party will have any further obligation to the other except as required by this Agreement, except as required by law or except to the extent, if any, specifically provided in one of the Company's employee benefit plans.

2. Employee acknowledges that, during the course of employment with the Company, Employee will have access to and become familiar with various confidential information and trade secrets including, but not limited to, those concerning the Company's software, systems, plans, procedures, facilities, equipment, staff, fee and cost structures, customer lists, marketing plans, contacts, computer programs, compilations of information, client data, financial condition, and budgets, trends and strategic plans, which are all of a confidential and secret nature, are the sole and exclusive property of the Company, and are of great value to the Company. Employee agrees never to divulge to anyone or to make use of such information, either during or after the term of this Agreement, unless directed to or given permission by an authorized representative of the Company and as necessary for Employee's performance of

200482014

Employee's job duties. All files, records, documents, lists, specifications, equipment, papers and similar items (whether in computer, electronic, hard copy or any other form) prepared by Employee or otherwise coming into his/her possession, shall remain the exclusive property of the Company, and shall not be removed from the premises of the Company, photocopied, duplicated or forwarded under any circumstances whatsoever without the prior consent of the Company and as necessary for Employee's performance of Employee's job duties. Employee agrees to return to the Company, either before or immediately upon the termination of Employee's employment, or at any time upon the Company's request, any and all written information, materials and equipment which constitute, contain or relate in any way to proprietary or confidential information or trade secrets of the Company and any other documents, equipment and materials of any kind which constitute the property of the Company, whether confidential or not, including any and all copies or notes thereof (including computer, electronic, hard copy or any other form media) which may have been made by or for Employee.

3. Employee understands that, during the course of Employee's work for the Company confidential information may be divulged or may become known to Employee that is the result of others entrusting information to the Company, and Employee agrees to treat such information in accordance with the confidentiality and non-use obligations as detailed in Paragraph 2 above.

4. Employee agrees that, in the course of performing services for the Company, Employee will not breach any agreement or obligation Employee may have with another with respect to confidential information. Employee agrees not to bring to the Company or use in Employee's work for the Company any information, materials or documents obtained from others under an agreement of confidentiality.

5. Information or data that has lawfully and without violation of a confidentiality obligation entered the public domain shall not be considered to be encompassed by the obligations in Paragraphs 2, 3, or 4 above.

6. Employee agrees that all inventions, discoveries, developments, computer programs and reports that Employee makes, conceives or develops in the course of employment with the Company, whether or not patentable or copyrightable (collectively, "works"), shall become and remain the sole property of the Company. Employee will notify the Company promptly and in writing of such works. Employee hereby transfers and assigns all right, title, copyright and interest in such works to the Company and will from time to time give the Company all reasonable assistance, execute all papers and do all things that may reasonably be required to protect and preserve the rights of the Company in such works. No provision in the Agreement is intended to require assignment of any of Employee's rights to the works for which no equipment, supplies, facilities, or confidential information of the Company was used; which was developed entirely on Employee's own time; which does not relate directly to the present or anticipated business activities of the Company or to the actual or anticipated research development activities of the Company; and which does not result from any work that Employee

performs for the Company.

7.  During the Restricted Period (as that term is defined below), Employee shall not, directly or indirectly, either as an employee, employer, consultant, agent, principal, partner, stockholder, corporate officer, director, or in any other individual or representative capacity, do any of the following:



(a) engage or participate in any business that is in direct competition in any manner whatsoever with the business of the Company (or its affiliates) relating to development and sale of computer and network security technology without regard to geographic location. This restriction shall apply throughout the United States or Canada as well as anywhere else in the world where the Company has customers during the term of Employee's employment. Employee acknowledges that the Company's business is not geographically limited in scope and is highly competitive. Employee has the skills and background to obtain employment and provide a livelihood for Employee in a business other than one in direct competition with the Company in the event of the termination of employment with the Company. It is the well-considered intent of the parties that this covenant not to compete is intended to protect the Company from Employee competing directly with Company, but is not intended to restrict Employee from seeking employment with any company outside of this restriction.

(b) (i) induce or attempt to induce any employee to quit employment with the Company; (ii) interfere with or disrupt the Company's relationship with other employees; or (iii) solicit, entice, take away or employ any person employed by the Company. This limitation shall apply to the employees of the Company's successors, affiliates and subsidiaries as well.

(c) (i) induce or attempt to induce any customer or supplier to terminate or modify its business relationship with the Company; or (ii) interfere with or disrupt the Company's relationship with any other person. This limitation shall apply to the customers and suppliers of the Company's successors, affiliates and subsidiaries as well.

For purposes of this Agreement, the term "Restricted Period" shall mean the term of Employee's employment with the Company (or any of its affiliates) and the one year period following the termination of Employee's employment with the Company (or any of its affiliates), provided, however, that, for employees working for the Company (or any of its affiliates) solely in California at the time of Employee's separation of employment, the Restricted Period shall mean the term of Employee's employment with the Company (or its affiliaties).

9.  Faithful Performance: Employee covenants and agrees to devote his/her full time and efforts to the faithful performance of the duties which may be assigned to him/her by the Company from time to time, and not participate in any other full-time or part-time employment or contracting without written authorization by the Company.

10. Employee Termination: Employee agrees to give two weeks' prior written notice of the termination of his/her employment with the Company or will forfeit payment or granting of any accrued paid time off. Employee agrees to repay the Company for any and all draws or advances against commissions or pay or profit sharing in the event of such termination. Employee also agrees to immediately pay back to the Company on a prorated basis any relocation, employment agency costs incurred in hiring employee, and training costs if employee terminates his/her employment with the Company or causes the Company to terminate the employee. This prorated basis shall be one year less active time of the employment with the Company.

11. Return of property: Employee agrees, upon the termination of this Agreement for any reason whatsoever, to return to an officer of the Company all records, equipment, copies of records, documents, client and employee lists, files, drawings, manuals, programs, proposals, business cards, directories, specifications, papers and any documents, whether in computer, electronic, or any other form, concerning the Company's customers or the Company' products or processes, which Employee may have. After the termination of Employee's employment, Employee shall not retain, in hard copy, computer, electronic, or any other form, any information which constitutes, contains, or relates in any way to proprietary, confidential, or trade secret information of the Company's, including but not limited to papers, reports, programs, software, plans, documents, equipment of any nature provided to Employee by or in connection with the Company or developed by Employee in the performance of services for the Company. To the extent that any domain names used by the Company for its websites or otherwise (or reserved for any such possible use) have been or are registered in Employee's name or were for any reason registered in Employee's name in connection with the scope of Employee's employment, or to the extent that any Internet, electronic or social media arrangements or any other relationships are in Employee's name or under his/her control (through a password, email or other account or otherwise) in connection with or arising out of Employee's capacity as an employee, Employee will cause the transfer all such domain names, registrations, passwords, rights and other items to or as directed by the Company and Employee shall cooperate in the execution of any and all documents and in doing such acts as to effect such transfer. In the event Employee shall violate this Agreement, Employee shall forfeit all claims to unpaid compensation, to the extent permissible by law, without affecting the right of the Company to compel the return of said records, equipment, copies of records, documents, lists, files, drawings, manuals, business cards, calendars, directories, specifications, paper and similar items. In the event that Employee shall have purchased any of the above-referenced materials, Employee shall be reimbursed by the Company upon presentation of an expense report, together with receipts.

12. Prospective Employers: Employee agrees that, with respect to each prospective employer with which the Employee applies or interviews for employment during the Employee's employment with the Company and within one year after the termination of Employee's employment with the Company, Employee will inform the prospective employer of the existence of this Agreement and will provide the prospective employer with a copy of this Agreement.

200482014

13.     Drug and Police Background Checking: Employee agrees to cooperate in pre-employment drug screen and police background checks to ensure suitability for employment, which are sponsored by the Company and are a condition of employment with the Company.

14.     Miscellaneous Provisions:

(a)     Employee agrees that the Company would be irreparably harmed by a violation of this Agreement and that monetary damages for such breach would not be readily calculable and that the Company would not have an adequate remedy at law therefor and Employee acknowledges, consents and agrees that the Company shall be entitled to equitable relief, including injunctive relief and/or specific performance, in the event of any actual, threatened or likely breach of this Agreement, in addition to all other remedies available to the Company at law or in equity.

(b)     The duties and obligations set forth in this Agreement shall apply regardless of whether Employee voluntarily quits Employee's employment with the Company or is terminated by the Company, and regardless of whether Employee's termination is with or without cause.

(c)     The Company and Employee acknowledge that the covenants and terms of this Agreement are intended to benefit not only the Company, but also its successors, subsidiaries, and affiliates. Accordingly, the Employee agrees that the Company may assign this Agreement to any person, partnership, or corporation that purchases or is purchased by the Company, as well as to any other Company subsidiary or affiliate. These persons and other entities shall succeed to the rights and obligations of this Agreement and may enforce the terms of the Agreement in their own behalf or in the name of the Company.

(d)     The head office of the Company is in Erie, Pennsylvania. Accordingly, this agreement shall be governed by the laws of the Commonwealth of Pennsylvania as those laws are applied by the Pennsylvania courts to contracts between Pennsylvania residents made and to be performed within Pennsylvania. The parties agree that any suit or proceeding arising out of this Agreement shall be brought only in the courts of Erie County, Pennsylvania or the United States District Court for the Western District of Pennsylvania, provided, however, that no party waives its right to request removal of such action or proceeding from the state court to a federal court. Each party consents to the personal jurisdiction of such courts.

(e)     If any provision of this Agreement is found by a court of competent jurisdiction to be unenforceable, in the court's discretion, that provision may be modified or severed and the remainder of this Agreement shall continue in full force and effect. If a court of competent jurisdiction determines that any term or provision of this Agreement is invalid or unenforceable because of the duration thereof or the geographical area included therein, the parties expressly agree that the court shall have the power to reduce the duration and/or geographical area of such term or provision. Any waiver, modification or amendment of any provision of this Agreement

200482014

shall be effective only if made in writing.

IN WITNESS WHEREOF, and intending to be legally bound, the parties have executed this New Employee Agreement on the date indicated above.

TaaSera, Inc.

By: _Kurt Buseck_

_____
Employee Signature

Title: _Chief Financial Officer_

Joseph M. Stanton
Employee

200482014